IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **PAMELA TABOR**,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>**TARGET CORPORATION,**<br><br>　　　　　　Defendant. | Case No. 2:15-cv-2508<br><br>**Judge Graham**<br><br>**Magistrate Judge Kemp** |

**OPINION & ORDER**

　　　This matter is before the Court on Defendant, Target Corporation's Motion for Summary Judgment. (Doc. 20). Plaintiff, Pamela Tabor, was robbed at gunpoint while in the parking lot of a Target retail store in Whitehall, Ohio. Tabor argues that Target should have foreseen that an armed robbery was likely to occur in the Target store's parking lot and taken steps to prevent it. Tabor argues that since Target did not, and she was thereby injured, Target was negligent and she should be entitled to recover damages for injuries she suffered as a result of the robbery.

**I) Factual Background**

　　　Tabor filed her complaint against Target in the Franklin County Court of Common Pleas. (Compl., Doc. 3). Target then removed the case to federal court on the basis of diversity jurisdiction. (Notice of Removal, Doc. 2). Target. (*Id.* at ¶ 10). Tabor is a resident of Columbus, Ohio. (Compl. at ¶ 1).

　　　It was about 9:30 in the morning when Tabor was robbed. (Tabor Dep. at 78:11–12, Doc. 22). Tabor was putting two plastic bags into her car, which was parked in the third parking spot "right in front" of a Target Store located at 3955 E. Broad Street, Whitehall, Ohio. (*Id.* at 78:7–10, 81:1–5; Cline Aff. at ¶ 3).  Tabor was putting a bag into her car when she felt the robber attempting to grab her purse, which was slung over her shoulder. (Tabor Dep. at 80:13–20). The robber said nothing, but kicked Tabor in the stomach three times after she refused to relinquish

1

her purse. (*Id.* at 86:6–8). Tabor did not let go of her purse until the robber pulled out a gun; at this point, she handed him the purse and the perpetrator "ran like a rabbit toward Broad Street." (*Id.* at 80:20–24). After the robbery, Tabor ran into Target, hysterical. The police attempted to identify the perpetrator based on Tabor's description, but they were unable to do so. (*Id.* at 91:22–92:2). Tabor was taken to the hospital and treated for chest pain after the robbery. (*Id.* at 94:13–24). The robbery took place at 9:35 a.m., about seven minutes after the robbery suspect walked into the Target parking lot. (Ex. B at PageID 194, Doc. 20-3).

The key issue in this case is whether there is a genuine issue of material fact about whether the armed robbery and assault was foreseeable. To determine this, the Court needs to review the safety measures in place at the Target store, the circumstances of the robbery, and the history of criminal activity relevant to the Target store.

Target had a number of safety measures in place at the time of the robbery. Target's expert Gregory Baeppler divided these into passive and active security measures. The passive security measures include:

> [1] Clear and unobstructed sight lines in all directions with no structural, ornamental, or landscape impediments to offer cover to a criminal element. [2] Sufficient lighting to discourage criminal elements and eliminate the anonymity desired by criminal elements. [3] Signs posted conspicuously throughout the lot advising "Security Cameras in Use". [4] Clear and unobstructed sight lines from the store entrance and exit. [5] This Target store had a Starbucks shop adjacent to the entrance with a clear and unobstructed view of the parking lot and in particular the area where the robbery occurred.

(Baeppler Report at 3, Doc. 20-3 Ex. B) (footnote omitted).

The active security measures include: [1] a parking lot surveillance system with "9 pole mounted CCTV cameras and perimeter PTZ [pan-tilt-zoom] cameras," the images for which are regularly monitored and time- and date-stamped. (*Id.*).

> [2] Regular and irregular management and associate visits coupled with cart-pushers on a regular basis all provide natural surveillance. [3] Target employs uniformed "Target Protection Specialists" on an hourly basis during peak customer time periods to observe and patrol the parking lot[.] [4] While not by design, the Brink's truck with two armed guards in full view with an unobstructed view before, during, and after the robbery is an active security measure to the extreme. [5] Frequent drive-byes by marked Whitehall Police Patrol Cars on Robinwood Avenue.

(*Id.*). Target's expert concluded that the "preceding measures provide a significant deterrent effect" to potential criminals. (*Id.* at 4).

2

Second, the Court must review a few relevant facts about the circumstances of the robbery. The robbery occurred in broad daylight on the morning of March 27, 2013. The suspect entered the lot at 9:28:30 a.m., seven minutes before the robbery. (Baeppler Report at 2). Before the robbery, at 9:33:18 a.m., a Brink's armored truck arrived, and one of the guards exited the truck and entered the Target store. (*Id.*). The truck was parked "within 80 feet of the eventual assault location." (*Id.*). The Brink's truck was still there when the robbery occurred. (*Id.*).

Third, the history of criminal activity in and around the Whitehall Target store bears on the question of whether Target should have foreseen this armed robbery. This evidence comes in several forms: (1) the deposition of a Whitehall Police Department detective, Scott Miller; (2) public records of crime in the area around the Target store; and (3) testimony from Target store employees, specifically members of its asset protection team.

Detective Miller testified that the neighborhood in which the Target store is located—Whitehall—is a higher crime area than others in the Columbus metro area. (Miller Dep. at 46:1–47:15, Doc. 24). Miller testified that the area around the Target store was a "moderate to high-low" area for crime. (*Id.* at 45:11–22). Detective Miller provided detailed testimony about a number of crimes reported at or near the Target store.

Plaintiff provides a detailed history of crime at or near the Target store, beginning in 2010:

- On July 5, 2010, a woman reported she had been assaulted by a male, and the police records show the location to be the Target store. (Miller Dep. at 72–73; Dep. Ex. A at PageID 340). There is no other indication of what took place or where it took place because the caller hung up without providing further details.
- On October 5, 2010, a shoplifting suspect inside the Target store was resisting efforts by Target's security personnel to detain him. (Miller Dep. at 71–72; Dep. Ex. A at PageID 339).
- On January 3, 2012, two female perpetrators stole a purse and fled the scene. (Miller Dep. at 70–72; Dep. Ex. A at PageID 338).
- On March 20, 2012, a verbal altercation took place in the Target parking lot between three young men sitting by the road and a man driving a vehicle. The three young men walked to a nearby creek where the same vehicle appeared, and the driver exited the vehicle and approached the young men. The man then began choking one of the young men

and "bent him backwards over a concrete barrier that protects people from falling into the creek." (Pl.'s Ex. E at PageID 403). The assault occurred "approximately 150 yards east of Target on Doney Street." (Miller Dep. at 66:20–21).

- On June 29, 2012, Whitehall police responded to a report of a theft in the Target parking lot that occurred around 12:30 p.m. The suspect stole bags of groceries from a shopper's car. (Pl.'s Ex. F, PageID 407).
- On August 7, 2012, a shoplifter stole a ball cap and assaulted a Target security guard. (Miller Dep. at 59–60; Dep. Ex. A at PageID 322).
- On February 21, 2013, an individual attempted to steal almost $1,600 worth of merchandise by going through a fire exit at Target. (Pl's Ex. D at PageID 400). Target's loss prevention employee saw a car outside the fire exit, which he believed to contain the would-be thief's accomplice. (*Id.*).
- On February 25, 2013, a woman reported her juvenile was assaulted behind the Target store. (Miller Dep. at 63:20–64:9).
- On March 7, 2013, the police took a call reporting 15 people fighting behind the Target store, but when the Whitehall police arrived, no one was there. (Miller Dep. at 64:19–65:9).
- On March 21, 2013, an individual was held hostage in the back of a U-Haul for three days but managed to escape and sought refuge in the Target store. (Pl.'s Ex. B at PageID 394). It's not clear where the kidnapping took place, or where the victim was held, but his captors pursued him into the Target store.
- On April 13, 2013, two suspects allegedly stole a cell phone from a vehicle in the Target parking lot. (Pl.'s Ex. C at PageID 397).

To summarize, the majority of the reported crimes at the Whitehall Target Store were for thefts. Only two crimes involved thefts from a Target customer. All but one of the violent crimes were either unsubstantiated or took place away from the part of the Target store frequented by customers. The one assault that did occur in the Target store was perpetrated on a Target employee attempting to apprehend a shoplifting suspect.

**II) Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine dispute of material fact exists if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, (1986). Any inferences drawn from the facts presented "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). When analyzing the facts, there must exist more than a "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Put differently, "[t]he plaintiff must present more than a mere scintilla of evidence in support of her position; the plaintiff must present 'evidence on which the jury could reasonably find for the plaintiff.'" *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (quoting *Anderson*, 477 U.S. at 252).

**III) Discussion**

**A) Plaintiff's Negligence Claim Fails as a Matter of Law**

Target is entitled to summary judgment because it has shown that "there is no genuine dispute as to any material fact and Target is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Specifically, Target is entitled to summary judgment on Tabor's negligence claim because Target could not foresee that one of its customers would be injured by the intentional, criminal actions of a third party given the totality of the circumstances.

"To prevail in a negligence action, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St. 3d 120, 122, 2009-Ohio-2495, 909 N.E.2d 120, 122–23, ¶ 10. In the context of premises liability, a business owes its invitee "a duty 'to exercise ordinary care and to protect the [invitee] by maintaining the premises in a safe condition.'" *Id.* at ¶ 10 (quoting *Light v. Ohio Univ.*, 28 Ohio St. 3d 66, 68, 502 N.E. 2d 611 (1986)). This duty sometimes includes the duty "to prevent a third

5

person from causing harm to another." *McLaughlin v. Speedway, L.L.C.*, No. 2015CA-184, 2016-Ohio-3280, ¶ 16, 2016 WL 3129919 (5th Dist. 2016). And while businesses are not "insurer[s] of an invitee's safety," *id.* at ¶ 17, a business owner is tasked with warning or protecting its business invitees from foreseeable risks, which can include a third party's criminal act, *see Heimberger v. Zeal Hotel Grp., Ltd.*, 2015-Ohio-3845, ¶ 17–18, 42 N.E.3d 323, 330 (10th Dist. 2015).

The criminal acts of third parties are foreseeable if "a reasonably prudent person would have anticipated an injury was likely to occur." *Id.* at ¶ 18. As with some "reasonableness" inquiries, this one depends on "the totality of the circumstances." *Id.* The most critical fact in assessing the totality of the circumstances is the history of similar criminal activity at or near the location of the business. *Id.*

> Three main factors contribute to a court's finding the evidence insufficient to demonstrate the foreseeability of a crime as a matter of law: (1) spatial separation between previous crimes and the crime at issue; (2) difference in degree and form between previous crimes and the crime at issue; and (3) lack of evidence revealing defendant's actual knowledge of violence.

*Id.* (quoting *Shivers v. Univ. of Cincinnati*, No. 06AP-209, 2006-Ohio-5518, ¶ 9 (10th Dist. 2006)). Crime is difficult to predict (or foresee), so before imposing a duty on business owners to protect their invitees from it, courts demand that "the totality of the circumstances must be 'somewhat overwhelming.'" *McLaughlin*, 2016-Ohio-3280 at ¶ 19 (quoting *Heimberger*, 2015-Ohio-3845 at ¶ 18).

The Court will analyze the three factors from *Heimberger* to determine whether Target should have foreseen the crime at issue here—an assault and armed robbery occurring in its parking lot.

First: the "spatial separation between previous crimes and the crime at issue." *Heimberger* at ¶ 18. Here, Tabor was robbed at gunpoint and assaulted in the Target parking lot, less than 100 feet from the store entrance. Two of the thefts reported at or near the Target store occurred in the parking lot. Several of the alleged crimes occurred "behind" the Target store, not in the store or the parking lot. To summarize, a few previous crimes did occur in almost the exact same location as the crime at issue here.

Second: the "difference in degree and form between previous crimes and the crime at issue." *Id.* Almost all of the reported crimes were for theft or robbery. And the few alleged crimes that involved violence are either unsubstantiated or differ significantly in degree. For example,

6

one alleged crime involved 15 people fighting behind the Target store in what the caller believed to be gang activity. One of the reported assaults was unsubstantiated. Another of the assaults took place off the Target property entirely. Another of the assaults was perpetrated by a Target shoplifter on a member of Target's security team. Target customers were not the victims of any of the reported assaults. Furthermore, there is no evidence that any of the crimes involved a weapon, much less a deadly weapon. Finally, there is no evidence of an armed robbery at the Target store or the use of violence in a robbery against any Target customer. To summarize, there is a significant difference in degree and form between previous crimes in the area and the crime at issue here.

Third: "lack of evidence revealing defendant's actual knowledge of violence." *Id.* There is no evidence that Target knew about the alleged 15-person fight behind its store. The other alleged assaults were all reported to the police from the Target store. Target did have some knowledge of violence in and around its Whitehall store.

The three factors guiding the Court's foreseeability analysis dictate that this armed robbery was not foreseeable. While it might have been foreseeable that a Target customer would have had something stolen from the parking lot—it happened twice in the two years before this crime—Target had no reason to believe that one of its customers would be the victim of an armed robbery and assault. In short, a customer being assaulted, having a gun pointed at them, and having their purse stolen is significantly more extreme than the previous instances of crime at or near the Target store.

Target argues that the evidence most closely resembles cases in which courts granted summary judgment for business owners. For example, in *McLaughlin*, the Ohio Fifth District Court of Appeals affirmed a grant of summary judgment where the plaintiff was beaten and had her car stolen while in a Speedway gas station. 2016-Ohio-3280 at ¶ 4. That court held that the totality of the circumstances was not overwhelming, because even if the court considered the entries in a police call log for evidence of criminal activity in the area, "the alleged crimes listed in the police call log were non-violent and differed in nature from the criminal conduct at issue in the present case." *Id.* at ¶ 27. Even evidence of an armed robbery in the Speedway store less than a month before the attack on the plaintiff was not "'somewhat overwhelming' evidence to show a genuine issue of material fact that it was foreseeable a violent criminal act would occur in the future." *Id.* at ¶ 28.

7

Tabor argues that a few facts distinguish *McLaughlin* from the instant case. Unlike in this case, the Speedway store in *McLaughlin* was located in a "low crime" area, according to the store manager. *Id.* at ¶ 20. Here, the Target store was located in an area of moderate to high crime. In *McLaughlin*, the court appeared to discount the numerous incidents listed in the call log because the bare-bones information it contained left the court to "guess" as to the meaning and details of many of the entries. *Id.* at ¶ 23. And here, Detective Miller explained the short hand in the call logs, so the Court may consider all of the criminal history around the Target store.

Tabor points the Court away from *McLaughlin* and towards another case. Tabor argues that when a business is "aware of numerous criminal incidents in the immediate area and specifically from patrons of" a neighboring business, specifically criminal incidents in the business's parking lot, a genuine issue of material fact exists as to whether the business should have foreseen that harm was likely to befall its customers in the parking lot. *Snow v. Fraternal Order of Eagles, Mansfield, Ohio Post No. 336*, 5th Dist. Richland, No. 93-CA-22, 1993 WL 500297, at *1 (Nov. 18, 1993). Tabor argues that like the business in *Snow*, here, Target had notice of numerous criminal incidents in and around its store, including numerous thefts; therefore, the Court should deny summary judgment.

*Snow* is similar, but so is *McLaughlin*. Both cases involve some history of criminal activity in close proximity to the business and a violent crime occurring on the premises. But the courts reached different results. This Court finds *Snow* less persuasive, and less analogous to the instant facts, than *McLaughlin*. For example, in *Snow* the court did not appear to consider the difference in the form and type of underlying crime (assault) with the form and type of crime typical to the area (vandalism and theft). But in *Snow*, the key fact appears to be the known source of criminal activity: a neighboring bar called The Oasis Club. *Id.* at *1 ("[T]he Eagles were aware of numerous criminal incidents in the immediate area and specifically from patrons of The Oasis Club."). Here, the type and form of crime differs substantially from the typical crimes reported in and around the Target store. Also, unlike in *Snow* where the business owner knew of a specific source of criminal activity, Target had no specific source of crime at which to direct its security resources.

*McLaughlin*, on the other hand, presents a closely analogous case. And while the Speedway store in *McLaughlin* was reportedly in a "low crime" area, and the court had doubts about using the police reports to determine the criminal history around the store, even a violent assault

8

and car theft against a customer inside of the Speedway store a month before the underlying crime was not enough to constitute the "somewhat overwhelming" evidence required to impose a duty on business owners to protect their customers from third-party criminal acts.

Here, the circumstances surrounding the crime also show that it was not foreseeable. First, the crime occurred at 9:30 a.m. in broad daylight. If an armed robbery were to occur just 80 feet from the store entrance, this seems the least likely time it would occur. Second, an armed robbery is even less foreseeable in a parking lot with multiple, visible cameras and multiple signs informing passersby that they are being surveilled. Third, the parking lot provides nowhere for a potential criminal to hide or escape notice. In summary, the circumstances of the crime at issue in this case provide even less basis to think that it was foreseeable.

Furthermore, to the extent Target owed its business invitees any duty to protect them from outside threats, it did so. Target had a number of security measures in place at the time of the incident, including numerous cameras, periodic patrols of the lot by Target personnel, and a store and parking lot layout that allowed for open lines of sight, which could deter criminal behavior.

To deny summary judgment would be to hold that there is a genuine issue of material fact "that it was foreseeable a violent attack would take place in broad daylight in the parking lot." *Reitz v. May Co. Dep't Stores*, 8th Dist. Cuyahoga, 66 Ohio App. 3d 188, 192, 583 N.E.2d 1071, 1074 (Feb. 20, 1990). And while it's certainly possible such a dangerous parking lot exists, Target's was not. The evidence here is far from "somewhat overwhelming." Target did not owe Tabor a duty to protect her from the armed robbery and assault because the crime was not foreseeable. Therefore, Target is entitled to summary judgment.

### IV) Conclusion

Target's Motion for Summary Judgment is **GRANTED**. (Doc. 20). The clerk is directed to enter judgment for Target.

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: February 27, 2017